# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

DERSE, INC.,

                Plaintiff,

    v.                                                Case No. 09-CV-97

HAAS OUTDOORS, INC.,

                Defendant.

_____

# ORDER

On January 22, 2009, plaintiff Derse, Inc. ("Derse") filed a summons and complaint in Milwaukee County Circuit Court against defendant Haas Outdoors, Inc. ("Haas") alleging that Haas failed to pay certain fees under multiple lease and services agreements. On January 29, 2009, Haas removed the case to the United States District Court for the Eastern District of Wisconsin. The court has jurisdiction over this matter by virtue of the parties' diversity of citizenship and an amount in controversy well in excess of $75,000.00. *See* 28 U.S.C. § 1332. Shortly after filing its notice of removal, Haas filed a motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act, and specifically 9 U.S.C. §§ 2-4.

## BACKGROUND

In September of 2006, Derse, a manufacturer of trade show exhibits and related services, and Haas, a purveyor of camouflage products under the brand name "Mossy Oak", entered into a lease agreement ("2006 Lease") for the purposes of providing an exhibit booth at multiple Shooting, Hunting and Outdoor Trades

("SHOT") shows. Under the 2006 Lease, Derse was to lease Haas an exhibit structure for Haas to promote Mossy Oak products at the SHOT shows for 2007 through 2011. In exchange, Haas agreed to pay Derse rent as provided under the 2006 Lease. The 2006 Lease contains no arbitration clause. (Compl. Ex. A).

In May of 2007, the parties entered into a second lease agreement ("May 2007 Lease") in which Derse agreed to provide Haas with certain additional exhibit components for the SHOT trade shows, including special doors, walls, an aroma machine emitting "fireplace" scent, and multiple antler chandeliers. The May 2007 Lease listed the additional rent due to Derse for these exhibit accessories, but did not include an arbitration clause. (Compl. Ex. B).

In September of 2007, the parties negotiated three more agreements expanding the contours of their business relationship. The first of these agreements ("First Addendum"), dated September 19, 2007, purports to amend the 2006 Lease to include additional accoutrements for the SHOT trade show exhibit, including sliding barn wood doors, a firepit and several graphics panels. (Compl. Ex. C). The First Addendum to the 2006 Lease does not include an arbitration clause.

The second agreement ("ATA Lease"), also dated September 19, 2007, creates a separate lease for a Mossy Oak exhibit at the Archery Trade Association ("ATA") trade shows for 2008 through 2011. Under the ATA Lease, Derse once again agreed to provide an exhibit package in exchange for a set rental fees. (Compl. Ex. D). The ATA Lease does not include an arbitration clause.

-2-

The third agreement ("NWTF Lease") dated September 19, 2007, creates a lease for a Mossy Oak exhibit package at the National Wild Turkey Federation ("NWTF") trade shows for 2008 through 2011. (Compl. Ex. E). The parameters of the NWTF Lease appear to be similar in substance to those of the ATA Lease, with Derse providing Haas an exhibit package for fixed rental fees. The NWTF Lease does not include an arbitration clause.

Also in September of 2007, Haas requested arbitration clauses be added to cover all of the parties' agreements. Derse apparently did not oppose Haas's request. Derse drafted versions of the First Addendum, the ATA Lease and the NWTF Lease to include arbitration clauses, signed the drafts and provided them to Haas on or about September 12, 2007. (English Decl. Exs. 1, 5 and 6, Docket #11). The parties dispute what happened next. Derse claims that Haas, having two drafts of each of the aforementioned agreements, signed only the versions of those agreements that did not include arbitration clauses and returned them to Derse on or about September 21, 2007. Haas claims that the drafts containing the arbitration clauses became effective upon Derse's signature and superceded the First Addendum, the ATA Lease and the NWTF Lease. What is clear from the face of these documents is that the versions with arbitration clauses are undated and signed only by Derse, while the versions without arbitration clauses are signed by both parties and dated September 19, 2007.

-3-

The parties continued to consummate additional agreements into the fall of 2007. In October of 2007, the parties entered into a Community Lease Agreement ("Community Lease"). In the Community Lease, Derse agreed to provide an exhibit package for use by unnamed licensees of Haas in the SHOT trade shows for 2008 through 2011. (Compl. Ex. F). The Community Lease includes an arbitration clause which states the following:

> Any and all disputes, controversies or claims of any kind and nature arising out of or relating to this Lease Agreement shall be resolved, exclusively, by arbitration in accordance with the Federal Arbitration Act (9 U.S.C. Section 1 Et. Seq.). Said arbitration shall be governed by the rules and procedures of the American Arbitration Association and shall be held in New Orleans, Louisiana before a panel of three (3) arbitrators.

(Compl. Ex. F ¶ 7).

The parties also contracted separately for services related to the Mossy Oak exhibits. Derse refers to these agreements as "budgetary guidelines." The first budgetary guideline ("SHOT Budget"), dated November 16, 2007, outlines the services Derse agreed to provide for Haas's Mossy Oak exhibit at the 2008 SHOT trade show, including transportation, installation, maintenance, support and dismantling. (Martin Decl. Ex. G, Docket #19). The SHOT Budget includes the following arbitration clause:

> Except for the right of either party to apply to a court of competent jurisdiction for a temporary restraining order, a preliminary injunction, or other equitable relief to preserve the status quo or prevent irreparable harm, any controversy or claim arising out of or related to this Agreement or to its breach shall be settled by final and binding arbitration by a single arbitrator in accordance with Commercial

-4-

> Arbitration Rules of the American Arbitration Association, pursuant to an arbitration held in Jackson, Mississippi, and judgment upon the award rendered by the arbitrator may be entered in any court of competent jurisdiction. Each party shall bear its own costs and attorney fees related to any arbitration proceeding hereunder.

(Martin Decl. Ex. G General Conditions ¶ 17, Docket #19).

The second budgetary guideline ("SHOT Licensee Budget"), also dated November 16, 2007, outlines the services Derse agreed to provide to Haas for its licensees exhibit at the 2008 SHOT trade show. (Martin Decl. Ex. H, Docket #19). The SHOT Licensee Budget includes an arbitration clause with language identical to that of the SHOT Budget. (Martin Decl. Ex. H General Conditions ¶ 17, Docket #19).

Finally, on or about January 17, 2008, the parties executed a price quotation ("Props Quote") for additional items to be included in the 2008 SHOT trade show exhibit. According to the Props Quote, Derse was to provide Haas with ten full body articulating mannequins and four literature racks. (Martin Decl. Ex. I, Docket #19). The Props Quote does not include an arbitration clause.

## ANALYSIS

The Federal Arbitration Act ("FAA") allows a party to an arbitration agreement to petition the district court to compel arbitration in the manner provided for in the agreement. 9 U.S.C. § 4. If a case pending in the district court involves issues referable to arbitration under an arbitration agreement, a party may move the court to stay the proceedings pending arbitration of those issues. 9 U.S.C. § 3. In order

to determine whether a binding arbitration agreement exists, the court must look to principles of state contract law. *Tinder v. Pinkerton Security*, 305 F.3d 728, 733 (7th Cir. 2002); *see* 9 U.S.C. § 2 (mandating enforceability of valid written arbitration agreements).

Here, although the parties omit any choice of law discussion from their briefs, it appears that Wisconsin contract law applies. In all of their agreements, with the exception of the budgetary guidelines and quotation of services, the parties explicitly chose Wisconsin law to govern. *See Designer Direct, Inc. v. DeForest Redev. Auth.*, 313 F.3d 1036, 1041 (7th Cir. 2002) (looking to choice of law provision to determine which state's law applied to contract dispute). Moreover, based on Wisconsin's choice of law rules, Wisconsin appears to have the most contacts with respect to the parties' agreements. *See Sybron Transition Corp. v. Security Ins. Co.*, 107 F.3d 1250, 1255 (7th Cir. 1997) (discussing Wisconsin's "grouping-of-contacts approach" to choice of law in contract cases).

Wisconsin law views arbitration agreements as it does other contracts. *See Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 159, 163 (Wis. 2006). Therefore, a court interpreting such agreements must consider the intent of the parties. *See FPL Energy Point Beach, LLC v. Energy Resources of Australia Ltd.*, 565 F.Supp.2d 999, 1004 (W.D.Wis. 2008) (citation omitted). When the contract language is unambiguous, "determining the parties' intent ends with the four corners of the contract." *Id.* (quoting *Huml v. Vlazny*, 716 N.W.2d 807, 820 (Wis. 2006)).

-6-

Whenever possible, terms of a contract should be given their ordinary or plain meaning. *See id.* Wisconsin law presumes arbitration provisions to be valid. *Wis. Auto Title Loans, Inc.*, 714 N.W.2d at 163-64.

Derse does not dispute that it agreed to arbitrate controversies arising out of or related to the Community Lease, the SHOT Budget and the SHOT Licensee Budget. These agreements represent the leasing of an exhibit for Haas's licensees, and the services Derse was to render at the 2008 SHOT trade show. Because Derse does not question the validity of these agreements, and in fact seeks to enforce them through this action, the court is obliged to compel arbitration with respect to the amounts Derse alleges are owing thereunder in a manner consistent with the arbitration clauses contained therein.

The key question for the court is whether the parties agreed to arbitrate controversies arising from or related to their other agreements, namely the 2006 Lease, the May 2007 Lease, the First Addendum, the ATA Lease, the NWTF Lease and the Props Quote. Haas claims they did, and directs the court to the versions of First Addendum, the ATA Lease and the NWTF Lease which include arbitration clauses. In the alternative, Haas argues that even if the parties did not include arbitration clauses in each of their written agreements, the court should nonetheless read all of the agreements together and construe them as a single contract. Derse argues that it should not be compelled to arbitrate its claims relating to the agreements with no arbitration clauses.

-7-

Haas does not challenge the validity of the 2006 Lease, the May 2007 Lease, the First Addendum, the ATA Lease or the NWTF Lease. Those agreements all state unequivocally that they "may be modified only in writing, signed by both parties." Yet, Haas claims that three undated documents, signed only by Derse, modify those agreements to include arbitration clauses. The court is not convinced. Nor is the court prepared to read arbitration clauses into all of the parties' agreements at issue in this case. Even if the court were to construe the parties' myriad agreements as one, Haas has not demonstrated that a broad arbitration clause would necessarily be included in that construction. While federal policy favors arbitration agreements, arbitration "is a matter of consent, not coercion and the parties are generally free to structure their arbitration agreements as they see fit and may limit by contract the issues which they will arbitrate." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citations and internal quotation marks omitted). Since Haas has failed to show that the parties agreed to arbitrate the claims Derse raises in this case with respect to the 2006 Lease, the First Addendum, the ATA Lease, the NWTF Lease and the Props Quote, the court lacks the power to compel arbitration of those claims. *See* 9 U.S.C. § 4.

The court will, however, stay all proceedings in this case pending the resolution of all arbitrable claims. Whenever a case includes both arbitrable and non-arbitrable claims or issues, the court may, in its discretion, stay the entire case or proceed with the non-arbitrable claims. *Volkswagon of Am., Inc.*, 474 F.3d at 971.

The court should stay the entire case if staying only the arbitrable claims while proceeding with the non-arbitrable claims "risks inconsistent rulings because the pending arbitration is likely to resolve issues material to the lawsuit." *Id.* at 972. In considering whether to stay the entire case, the court must consider not only the risk of inconsistent rulings, but also the extent to which the parties are bound by the arbitration, and the prejudice that may result from delay. *Id.* Here, the risk of inconsistent rulings is real since the parties' overall dispute involves one common enterprise, the Mossy Oak trade show exhibit, and all of Derse's claims involve the material issue of whether Derse and Haas fulfilled their agreed-to obligations in that common enterprise. Based on the arbitration agreements, the parties would also be bound by an arbitrator's decision on this issue. Derse has not claimed it would suffer prejudice from any delay in this case, and the court has no independent basis on which to find prejudice. Therefore, given the circumstances of this case, the court finds the most appropriate and efficient course of action is to stay the entire case pending arbitration. It is the court's hope that arbitration might help resolve, or shed light on, the issues that remain for the court's consideration. *See id.*

Accordingly,

**IT IS ORDERED** that defendant's motion to stay this action and to compel arbitration (Docket #10) be and the same is hereby **GRANTED** in part and **DENIED** in part;

**IT IS FURTHER ORDERED** that the parties are to proceed with arbitration on the plaintiff's claims arising out of the agreements described in this order as the Community Lease, the SHOT Budget and the SHOT Licensee Budget in the manner provided for in the arbitration clauses of those agreements.

**IT IS FURTHER ORDERED** that this case be and the same is hereby **STAYED** pending the outcome of arbitration; the parties shall notify the court in writing of the resolution of arbitration when one has been reached.

Dated at Milwaukee, Wisconsin, this 21st day of July, 2009.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge